580 So.2d 425 (1991)
James A. NORRIS, Jr., District Attorney, Appellant,
v.
MONROE CITY SCHOOL BOARD, Appellee.
No. 22332-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1991.
*426 Lee E. Ineichen, Jr., Asst. Dist. Atty., for appellant.
Benjamin Jones, Monroe, for appellee.
Before NORRIS, BROWN and STEWART, JJ.
NORRIS, Judge.
The District Attorney of Ouachita Parish sued the Monroe City School Board alleging that the Board violated the Open Meeting Law on June 9 and 27 (mistakenly cited in petition as June 28), 1988. The D.A. had previously sued the Board for Open Meeting Law violations and the Board had stipulated a judgment (November 1987) whereby its "executive sessions" to discuss legal matters would be in compliance with La. R.S. 42:6.1A(2) and 42:6.[1] The petition prayed for an injunction and contempt of court. The trial court rejected the D.A.'s demands and the D.A. appeals. We reverse in part, affirm in part and render.

Facts
At the regular Board meeting of June 7, 1988, Superintendent James Stafford announced that the Finance Committee would meet on June 9 at 1:00 p.m. "to discuss the Governor's Education Reform Package and its effect on personnel." The Finance Committee consisted of Board members Sharon Taylor and Ed Hodges. At the scheduled time Mrs. Taylor, Mr. Hodges and Board President Harold McCoy met with Dr. Stafford in his office. Dr. Stafford later called this a "briefing session" or an "informational meeting." Dr. Stafford testified that the purpose of the meeting was to apprise the Committee of budget cuts threatened by Governor Roemer; cuts as large as $900,000 were possible and would require spending and personnel changes.
Debra Bell, a reporter for the Monroe News-Star, testified by stipulation that she tried to get into this meeting for two hours but was refused entry. Dr. Stafford told Ms. Bell that the meeting was not open to the media because competency and layoffs would be discussed. President McCoy suggested that the Board call its attorney, who allegedly advised them the Committee was within its right to conduct the meeting behind closed doors.
Everyone present at the meeting testified that there were no minutes and no vote taken; and the meeting generated no recommendation or action by the Board. Dr. Stafford admitted that there was some discussion at the meeting. He explained that Committees sometimes make recommendations to the Board, but the Finance Committee did not do so as a result of the June 9 briefing. Mrs. Taylor testified that the financial data coming from Baton Rouge was changing daily; when she gave a financial report at the next regular meeting of the full Board on June 21, her report was based not on data she got at the June 9 meeting but on fresh figures from a legislative contact on the morning of the Board meeting.
On June 27, 1988 the Board held a long public hearing about rezoning plans for all City schools. The Board is under a 1981 federal court decree in a suit (Andrews v. Monroe City School Board, No. 11,297, Western District of Louisiana) that sought to desegregate the Monroe City School System. While certain major issues of that case have been long resolved, it is still an active court case; the Board must comply with the guidelines set forth in the decree and cannot change attendance zones without court approval. After about three hours of spirited public debate, the Board's attorney advised that the proposed elementary school changes would not violate the order. However, he recommended that the *427 Board go into executive session to discuss "litigation and the various options at the junior and senior high school level." The minutes also show that after returning from the executive session and resuming the open meeting, a motion was made and passed to petition the federal court for a change in the 1981 decree. According to the docket sheet in Andrews, the Board submitted a proposed consent decree to the federal court on August 12; the various intervenors simultaneously filed concurrences, and the court signed the consent decree on August 15.

Applicable law
The state constitution declares that no person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law. La. Const. art. 12 § 3. Embodying this guarantee, the Louisiana Open Meeting Law, La.R.S. 42:1-12, provides that every meeting of any public body shall be open to the public unless closed pursuant to statute. La.R.S. 42:5A. The statute, however, must be liberally construed in favor of assuring that public business is performed in an open and public manner and that citizens are advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy. La.R.S. 42:4.1.
In June 1988, La.R.S. 42:4.2A(1) defined a "meeting" as "the convening of a quorum of a public body to deliberate or act on a matter over which the public body has supervision, control, jurisdiction or advisory power."[2] School boards, their committees and subcommittees are included as "public bodies." La.R.S. 42:4.2A(2).
Exceptions to open meetings are set forth in La.R.S. 42:6.1, which allows private executive sessions of public bodies for the following reasons, among others:
(1) Discussion of the character, professional competence, or physical or mental health of a person, provided that such person is notified in writing at least twenty-four hours before the meeting and that such person may require that such discussion be held at an open meeting, and provided that nothing in this Subsection shall permit an executive session for discussion of the appointment of a person to a public body. In cases of extraordinary emergency, written notice to such person shall not be required; however, the public body shall give such notice as it deems appropriate and circumstances permit.
(2) Strategy sessions or negotiations with respect to collective bargaining, prospective litigation after formal written demand, or litigation when an open meeting would have a detrimental effect on the bargaining or litigating position of the public body.
Before retiring into executive session, a public body must comply with certain notice and procedural rules, set forth in La. R.S. 42:6:
A public body may hold executive sessions upon an affirmative vote, taken at an open meeting for which notice has been given pursuant to R.S. 42:7, of two-thirds of its constituent members present. An executive session shall be limited to matters allowed to be exempted from discussion at open meetings by R.S. 42:6.1; however, no final or binding action shall be taken during an executive session. The vote of each member on the question of holding such an executive session and the reason for holding such an executive session shall be recorded and entered into the minutes of the meeting. Nothing in this Section or R.S. 42:6.1 shall be construed to require that any meeting be closed to the public, nor shall any executive session be used as a subterfuge to defeat the purposes of R.S. 42:1 through R.S. 42:12.
These provisions are mandatory; when a board has called a meeting, provided *428 notice in accord with law and announced its agenda, the board must comply with the statute in order to retire into executive session. Reeves v. Orleans Parish Sch. Bd., 281 So.2d 719 (La.1973).
The Monroe City School Board was also operating under a stipulated judgment whereby it agreed not to go into executive session to discuss legal matters except in compliance with R.S. 42:6.1A(2) and 42:6. R.p. 11.
The district attorney is a proper party plaintiff to enforce the Open Meeting Law; he may pray for injunctive relief and proceed by summary process. La.R.S. 42:10B, 42:11A(2), 42:12B. The D.A., however, is not a "person" who may recover attorney fees for the enforcement of the statute. La.R.S. 42:10, 11.

Discussion
By its first three assignments the D.A. contests the trial court's findings as to the June 9 Finance Committee meeting. These assignments have merit.
In written reasons for judgment the trial court analyzed the case of Common Cause v. Morial, 506 So.2d 167 (La.App. 4th Cir.), writ denied 512 So.2d 458 (1987). There the court of appeal held that a "meeting" as defined in the statute required "a discussion or active exchange of views." Applying that definition to the instant facts, the trial court found that the June 9 Finance Committee meeting was nothing more than a unilateral presentation of facts and data by Dr. Stafford to the assembled Committee members. There was little or no discussion (Mrs. Taylor and Mr. Hodges specifically denied asking any questions) and no genuine exchange of views.
If the only question were one of manifest error, we would perhaps be inclined to agree; there is some evidence that discussion took place and some evidence that it did not. This analysis, however, misses the point of the Open Meeting Law. At the close of the June 7 regular meeting, Dr. Stafford stated that the Finance Committee would hold a meeting on June 9 to discuss the effect of prospective budget cuts on personnel; this was duly recorded in the minutes. In other words, a meeting was called, advance notice given and an agenda (albeit narrow) announced. Once the meeting was called, the Committee had the right to convert it to a closed meeting but only for the purposes stated in R.S. 42:6.1 and in compliance with R.S. 42:6. On the instant record there is no evidence that the Committee heard a motion to hold an executive session, took a vote or in any way complied with R.S. 42:6. The Open Meeting Law is not optional; once the meeting was legally called, it could be cancelled or converted to Executive Session in a lawful manner, but neither was done here. For these reasons the Committee's conduct on June 9 was a violation of both the statute and the stipulated judgment of November 1988.
We would further observe that the purpose of the law is to prevent just this type of situation. At the June 7 meeting Dr. Stafford did not mention that a closed meeting would be held, or even announce a topic that would give rise to a closed meeting; shortly before the meeting, he told Ms. Bell that the topic would be one that does give rise to a closed meeting; and at trial he testified that no genuine meeting occurred. This state of confusion would have been averted if the Committee would simply have held an open meeting or voted to hold an executive session in accord with the law and stipulated judgment.
On this record the D.A. is entitled to a judgment enjoining the Monroe City School Board from holding closed Committee meetings without first complying with the formalities prescribed by R.S. 42:6, 42:6.1 and the prior judgment. Judgment will be rendered accordingly.
The D.A. further prayed for a finding of contempt. Contempt is authorized for "wilful disobedience of any lawful judgment." La.C.C.P. art. 224(2). On this record, however, we conclude that contempt is not appropriate. The D.A. conceded at trial that he had not properly sued the individual board members, and states in brief that the only sanction he would seek is to make each member read the Open Meeting Law. Everyone present at the *429 June meeting, however, testified he or she had read the Open Meeting Law and had no intention of violating either the law or the stipulated judgment; they even sought and obtained counsel's advice. Under these circumstances the Committee members' conduct was not "wilful disobedience" and we decline to hold the School Board in contempt.
By its fourth and fifth assignments the D.A. contests the trial court's findings as to the June 27 executive session of the full Board. The D.A. argues that the statutory exception to open meetings to discuss "litigation" did not apply because there was no litigation pending in the Andrews case, merely a standing order.
We disagree. The record shows that there was a 1981 federal court decree under which the Board was operating; any zoning changes required federal approval. On June 27 the Board conducted a public hearing about rezoning plans. The Board's attorney felt that part of the proposals advanced would comply with the existing decree but that other parts might not and would require a modification of the decree. He suggested the executive session to discuss the junior and senior high school options. The motion to hold an executive session to discuss strategy in litigation was passed in accordance with R.S. 42:6. The Board submitted a proposed consent decree to the federal court on August 12; this was approved on August 15.
In brief the D.A. emphasizes the lack of formal written demand or petition in the federal case to justify this meeting. The statute, however, requires a formal written demand only for executive session to discuss "prospective litigation." Pending, existing litigation may be the subject of executive session whenever an open meeting would have a "detrimental effect" on the litigating position of the public body. R.S. 42:6.1A(2). Considering the difficulty of securing federal approval and other litigants' consent to any change, the Board may well have thought that further public access to their strategy conference would not have been helpful.
Given these facts, the trial court was not plainly wrong in finding that the executive session of June 27, 1988 was called in compliance with R.S. 42:6 and the judgment, and for a topic authorized by R.S. 42:6.1 and the judgment. These assignments do not present reversible error.
For the reasons expressed, the trial court's judgment is reversed insofar as it failed to declare that the Board's conduct on June 9, 1988 was a violation of the Open Meeting Law and the stipulated judgment. Judgment is rendered as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the Plaintiff, the District Attorney of Ouachita Parish, and against the Defendant, the Monroe City School Board, enjoining the Board or its constituent committees from meeting in executive session except in compliance with R.S. 42:6, and specifically:
(1) At an open meeting for which notice has been given in accord with La. R.S. 42:7, an affirmative vote of two-thirds of the constituent members present must approve the executive session;
(2) The executive session so voted upon shall be limited to the matters allowed to be exempt from open meetings under La.R.S. 42:6.1 and the stipulated judgment of November 20, 1987 in Case No. 87-4226 (Norris v. Monroe City School Board); and
(3) The vote of each member on the question of holding the executive session and the reason for holding such an executive session shall be recorded and entered into the minutes of the meeting.
With respect to the Board's conduct on June 27, 1988, the trial court's judgment is affirmed. Costs and attorney fees are not assessed. La.R.S. 13:4521; 42:11C.
REVERSED IN PART; AFFIRMED IN PART AND RENDERED.
NOTES
[1] Norris v. Monroe City School Board, No. 87-4226, docket of the Fourth Judicial District Court, Ouachita Parish, Louisiana.
[2] R.S. 42:4.2A(1) was amended in 1988; a meeting now also means "the convening of a quorum of a public body by the public body or by another public official to receive information regarding a matter over which the public body has supervision, control, jurisdiction, or advisory power." La.Acts 1988, No. 821. This amendment, which would now encompass the instant "briefing session," was not effective until September 9, 1988 and does not affect the case.